UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ARACELI S.D.G., | ) | Case No.  5:21-cv-02046-SP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**INTRODUCTION**

On December 7, 2021, plaintiff Araceli S.D.G. filed a Complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of supplemental security income ("SSI").  The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the administrative law judge ("ALJ") properly considered the medical evidence in assessing plaintiff's residual functional capacity ("RFC"); and (2) whether the ALJ

1    properly considered plaintiff's subjective testimony in assessing her RFC.

2    Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 4-21; *see*

3    Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-25.

4        Having carefully studied the parties' memoranda, the Administrative Record

5    ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein,

6    the ALJ failed to properly evaluate either the opinion of plaintiff's treating

7    physician or plaintiff's subjective symptom testimony.  The court therefore

8    reverses the decision of the Commissioner denying benefits and remands the

9    matter for further administrative action consistent with this decision.

10                                    **II.**

11                    **FACTUAL AND PROCEDURAL BACKGROUND**

12       Plaintiff was 44 years old on the alleged disability onset date.  AR at 64.

13   She has no past relevant work.  AR at 664.

14       On October 19, 2015, plaintiff filed an application for SSI, alleging a

15   disability onset date of August 10, 2015.  AR at 64.  Plaintiff claimed she suffered

16   from systemic lupus erythematosus.  *Id.*

17       Plaintiff's applications were initially denied on May 26, 2016, and on

18   reconsideration on September 6, 2016.  AR at 74, 86.

19       Plaintiff requested a hearing, which the ALJ held on September 7, 2018.  AR

20   at 35-63.  Plaintiff, represented by counsel and assisted by a Spanish language

21   interpreter, appeared and testified at the hearing.  AR at 35-59.  The ALJ denied

22   plaintiff's claim on September 26, 2018.  *See* AR at 22-30.

23       Plaintiff commenced an action for judicial review in this court pursuant to

24   42 U.S.C. § 405(g).  AR at 676-77.  The parties agreed to voluntarily remand the

25   case, and the court remanded the case back to the agency.  AR at 686-91.  In

26   February 2020, the Appeals Council vacated the decision of the Commissioner and

27   remanded it to the ALJ for consideration of physician Diaz-Gomez's opinion,

28

                                      2

1  evaluation of the severity and limiting effects of plaintiff's cervical impairment,
2  and further consideration of plaintiff's subjective complaints.  AR at 694-95.

3       Plaintiff again appeared and testified at a hearing before the ALJ on
4  September 14, 2021, again represented by counsel and assisted by an interpreter.
5  AR at 646-75.  The ALJ also heard testimony from a vocational expert.  AR at
6  663-72.  On September 29, 2021, the ALJ again denied plaintiff's claim for
7  benefits.  AR 620-37.

8       Applying the well-established five-step sequential evaluation process, the
9  ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity
10  since October 19, 2015, the application date.  AR at 622.

11       At step two, the ALJ found plaintiff suffered from the following severe
12  impairments: lupus (discoid lupus erythematosus versus systemic lupus
13  erythematosus); chronic peripheral vascular disease; Raynaud's disease; peripheral
14  neuropathy; varicose veins; cervical spondylosis; and seropositive erosive
15  rheumatoid arthritis.  AR at 623.

16       At step three, the ALJ found plaintiff's impairments, whether individually or
17  in combination, did not meet or medically equal one of the impairments set forth in
18  20 C.F.R. Part 404, Subpart P, Appendix 1.  AR at 627.

19       The ALJ then assessed plaintiff's RFC,[1] and determined she had the ability
20  to perform:

21       light work as defined in 20 CFR 416.967(b) except she can
22       occasionally climb, stoop, kneel, crouch, and crawl; can never

23

24       [1]  Residual functional capacity is what a claimant can do despite existing
25  exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-
26  56 nn.5-7 (9th Cir. 1989) (citations omitted).  "Between steps three and four of the
27  five-step evaluation, the ALJ must proceed to an intermediate step in which the
28  ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486
F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

1    balance as it is defined in the Dictionary of Occupational Titles and

2    Selected Characteristics of Occupations; can frequently operate foot

3    controls bilaterally; can frequently push, pull, reach, handle and finger

4    bilaterally; and must avoid extreme cold and heat.

5    AR at 628.

6        The ALJ found, at step four, that plaintiff had no past relevant work.  AR

7    at 635.

8        At step five, the ALJ considered the plaintiff's age, education, work

9    experience, and RFC, and found plaintiff could perform jobs that exist in

10   significant numbers in the national economy, including collator, retail marker, and

11   stock checker.  AR at 635-36.  The ALJ therefore concluded plaintiff was not

12   under a disability, as defined in the Social Security Act, at any time since October

13   19, 2015.  AR at 637.

14       The ALJ's September 29, 2021 decision stands as the final decision of the

15   Commissioner.

16                                   **III.**

17                        **<u>STANDARD OF REVIEW</u>**

18       This court is empowered to review decisions by the Commissioner to deny

19   benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

20   Administration ("SSA") must be upheld if they are free of legal error and

21   supported by substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th

22   Cir. 2001) (as amended).  But if the court determines the ALJ's findings are based

23   on legal error or are not supported by substantial evidence in the record, the court

24   may reject the findings and set aside the decision to deny benefits.  *Aukland v.*

25   *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

26   1144, 1147 (9th Cir. 2001).

27       "Substantial evidence is more than a mere scintilla, but less than a

28

                                      4

1   preponderance." *Aukland*, 257 F.3d at 1035 (citation omitted).  Substantial

2   evidence is such "relevant evidence which a reasonable person might accept as

3   adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir.

4   1998) (citations omitted); *Mayes*, 276 F.3d at 459.  To determine whether

5   substantial evidence supports the ALJ's finding, the reviewing court must review

6   the administrative record as a whole, "weighing both the evidence that supports

7   and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at

8   459.  The ALJ's decision "cannot be affirmed simply by isolating a specific

9   quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (internal quotation

10  marks and citation omitted).  If the evidence can reasonably support either

11  affirming or reversing the ALJ's decision, the reviewing court "may not substitute

12  its judgment for that of the ALJ." *Id.* (internal quotation marks and citation

13  omitted).

**IV.**

**DISCUSSION**

**A.   The ALJ Failed to Properly Consider a Treating Physician's Opinion**

17       Plaintiff argues that the ALJ's unfavorable decision was not supported by

18  substantial evidence, and that the ALJ failed to properly consider relevant medical

19  evidence that documents significant symptoms and limitations preventing plaintiff

20  from pursuing any full-time employment.  P. Mem. at 4.

21       Under the regulations applicable in this case, to determine whether a

22  claimant has a medically determinable impairment, the ALJ considers different

23  types of evidence, including medical evidence.  20 C.F.R. §§ 404.1527(b),

24  416.927(b).[2]  The regulations distinguish among three types of physicians: (1)

---

[2]   The SSA issued new regulations effective March 27, 2017.  The regulations cited in this section are effective for cases filed prior to March 27, 2017, such as this one.  *See* 20 C.F.R. §§ 404.1527(b), 416.927(b).

treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.027(c)(1)-(2).  The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of a treating physician. *Smolen*, 80 F.3d at 1285.  If a treating or examining physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*, 81 F.3d at 830.  If a treating or examining physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it.  *Id.* at 830-31.  "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician."  *Id.* at 831 (citations omitted).

An ALJ must also consider evidence from those who are not acceptable medical sources.  *See* 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1).  An ALJ may only reject the opinion of a non-acceptable medical source by providing a germane reason.  *See Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015).

## 1.   **The ALJ Properly Assessed Dr. Nazeri's Opinion**

Plaintiff argues that the ALJ failed to properly consider Dr. Nazeri's opinion that plaintiff could not maintain a full-time or part-time job due to multiple medical conditions.  P. Mem. at 8.

6

Dr. Kavoos C. Nazeri, a rheumatologist, treated plaintiff from December 2015 through April 2018. *See* AR at 401-465. Dr. Nazeri's treatment notes generally showed that plaintiff was treated for lupus, iron deficiency anemia, Raynaud's, and postherpetic neuralgia, and that she was treated with steroids, Plaquenil, and Imuran. AR at 407, 419. During several visits Dr. Nazeri documented that plaintiff had decreased range of motion (AR at 404, 407, 410, 413, 419), while she had normal range of motion on other occasions (AR at 411, 426, 432, 435). In June 2016, Dr. Nazeri noted in plaintiff's treatment plan that in his opinion, "patient cannot maintain a full-time or part-time job due to multiple medical conditions." AR at 417-18. Plaintiff continued to complain of pain, and in September 2016, Dr. Nazeri noted she had "grinding of the left knee." AR at 420. The doctor recommended a steroid injection in plaintiff's left knee with Depomedrol 60 mg., which she received, and advised her to follow up about her sympathetic ganglion injection for post herpetic neuralgia. AR at 421, 436.

Although the ALJ did not specifically mention Dr. Nazeri in his decision, he nevertheless reviewed and discussed Dr. Nazeri's treatment notes pertaining to plaintiff's complaints of pain. AR at 623 (citing AR at 420, 421, 432, 435, 442). The ALJ found that plaintiff's left knee osteoarthritis was non-severe because the record reflected only mild symptoms related to this impairment. AR at 623. The ALJ also reviewed Dr. Nazeri's treatment notes with respect to plaintiff's lupus diagnosis, but generally found that those notes showed normal range of motion in her rheumatology exams. AR 630.

Plaintiff argues that the ALJ failed to properly consider Dr. Nazeri's opinion that plaintiff could not maintain a full-time or part-time job due to her multiple medical conditions. P. Mem. at 8. But this is a vocational opinion on an ultimate issue, not a medical opinion. As the Ninth Circuit has explained, "this determination is for the Social Security Administration to make, not a physician."

1   *McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011) (affirming the ALJ's rejection

2   of medical opinion that claimant "could not work at all").  An ALJ "will not give

3   any special significance to the source of an opinion on issues reserved to the

4   Commissioner." 20 C.F.R. § 404.1527(d)(3).  "A treating physician's evaluation

5   of a patient's ability to work may be useful or suggestive of useful information, but

6   a treating physician ordinarily does not consult a vocational expert or have the

7   expertise of one." *McLeod,* 640 F.3d at 884.  Dr. Nazeri's opinion that plaintiff

8   cannot maintain a full-time or part-time job provided no basis for this conclusion

9   and did not include any specific functional limitations.  As such, the ALJ was not

10  required to adopt or give any special weight to Dr. Nazeri's disability opinion.

11          **2.      The ALJ Failed to Properly Consider One Medical Opinion**

12          Plaintiff argues the ALJ failed to properly consider the relevant medical

13  evidence that documented significant symptoms and limitations preventing

14  plaintiff from pursuing full-time employment.  P. Mem. at 4.  In assessing

15  plaintiff's RFC, the ALJ considered the opinion of plaintiff's treating physician Dr.

16  Diaz-Gomez, and the opinions of two examining physicians, Dr. Girgis and Dr.

17  Yu.  *See* AR at 630, 633, 634.

18          **a.      Treating Physician Dr. Diaz-Gomez**

19          Dr. Mario Diaz-Gomez was plaintiff's primacy care physician. On

20  September 15, 2017, he prepared a written medical opinion regarding plaintiff's

21  ability to do work-related activities.  AR at 1468-72.  Dr. Diaz-Gomez opined that

22  plaintiff was limited to lifting less than 10 pounds as well as sitting and standing or

23  walking for less than 2 hours each in an 8 hour work day.  AR at 1468.  He

24  indicated that plaintiff was unable to meet competitive standards in most work

25  function areas, and would likely miss more than 4 days of work per month because

26  of her medical conditions.  AR at 1471-72.  Dr. Diaz-Gomez based these

27  limitations on plaintiff's "uncontrolled Lupus symptoms [which] are good one day

28

1   bad the next [and] may change within minutes [or] hours." AR at 1469.

2       On September 19, 2017, Dr. Diaz-Gomez prepared another statement

3   reporting that plaintiff had lupus, hypertension, peripheal neuropathy, and

4   spondylosis of the cervical region, and experienced exertional and postural

5   limitations that significantly limited her activities of daily living. AR at 1473.

6           **b.    Examining Physicians Dr. Girgis and Dr. Yu**

7       Dr. Bahaa Girgis examined plaintiff and performed a medical evaluation on

8   May 13, 2016. AR at 334-39. Dr. Girgis observed that plaintiff was in "no acute

9   distress," and was able to walk and move quickly, had "bluish discoloration on the

10  tips of her fingers," and had "some hyper pigmented brownish discoloration of the

11  skin of both legs." AR at 335, 336. Plaintiff showed no signs of joint swelling in

12  her shoulders or elbows, and her range of motion in both was grossly normal. AR

13  at 337. With respect to plaintiff's lower extremities: she had a grossly normal

14  range of motion in the hips, knees, and ankles, showed no signs of effusion or

15  deformity of the knees, and no mediolateral or anteroposterior instability. AR at

16  337. Dr. Girgis noted plaintiff had "good active motion," no pill-rolling tremor, no

17  atrophy or fasciculation, her strength was 5/5, and she was without focal motor

18  deficits. *Id*. Plaintiff also had normal gait and did not require an assistive device

19  to ambulate across the room. *Id*. She could change position and get on and off the

20  examining table without difficulty. AR at 338. Dr. Girgis opined that plaintiff was

21  "capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently."

22  *Id*. She could "stand and walk 6 hours in an 8-hour workday with frequent stops of

23  10 minutes per hour." *Id*. She could also "sit 6 hours in an 8-hour workday." *Id*.

24  Dr. Girgis additionally reviewed plaintiff's medical records that showed she had

25  positive ANA antibodies in December 2015. AR at 335.

26      Dr. Warren Yu, an orthopedic consultative examiner, performed an

27  orthopedic examination of plaintiff on August 21, 2021. AR at 1474-78. Dr. Yu

28

9

1   observed plaintiff walked without a limp and had normal gait without antalgia.  AR

2   at 1475.  She could also squat and rise, and did not use an assistive device.  *Id*.  She

3   had full range of motion of the cervical, lumbar spine, elbows, and wrists.  AR at

4   1475-76.  The examination revealed tenderness over DIP and PIP joints bilaterally,

5   but otherwise no cynanosis, clubbing, varicosities, edema, dermatitis, or

6   ulcerations. AR at 1476.  Dr. Yu opined plaintiff could lift and carry 20 pounds

7   occasionally, and 10 pounds frequently; could push and pull on a frequent basis;

8   and could sit or walk and stand 6 hours out of an 8-hour work day.  AR at 1477.

9                 **c.   <u>The ALJ's Finding</u>**

10        The ALJ assigned Dr. Yu's and Dr. Girgis's opinions partial weight because

11   they did not have a treatment relationship with plaintiff and their opinions were not

12   entirely supported by the record.  AR at 633.  The ALJ specifically rejected Dr.

13   Girgis's opined limitation that plaintiff needed frequent stops of 10 minutes per

14   hour, reasoning that her "joint and muscle pain from Lupus waxed and waned and

15   appeared to impose only moderate limitations but did not prevent [plaintiff] from

16   standing for six hours in an eight-hour workday with normal break."  AR at 633.

17   Plaintiff argues the ALJ gave no specific reason to reject this opined limitation –

18   contending the ALJ simply stated it was not supported by objective evidence (P.

19   Mem. at 7, 15) – but that plainly was not the case.

20        The ALJ gave little weight to the opinion of Dr. Diaz-Gomez.  AR at 634.

21   Because Dr. Diaz-Gomez was a treating physician whose opinion was contradicted

22   by the consultative opinions of the State agency physicians (AR at 338, 1477), the

23   ALJ needed to provide specific and legitimate reasons supported by substantial

24   evidence to reject it.  *See Smolen*, 80 F.3d at 1285.  The ALJ provided three

25   separate reasons for discounting Dr. Diaz-Gomez's opinion: First, the ALJ

26   explained that Dr. Diaz-Gomez inadequately referenced medically acceptable

27   objective clinical or diagnostic findings.  AR at 634.  Second,  the ALJ discounted

28

                                           10

1   Dr. Diaz-Gomez's opinion because his assessment was based on a summary of the

2   claimant's subjective complaints, diagnoses, and treatment without documenting

3   any significant positive objective findings.  *Id*.  Third, the ALJ found that the

4   objective medical evidence did not support the doctor's findings of extreme

5   physical limitations.  *Id*.  Plaintiff argues the ALJ failed to properly consider this

6   opinion.[3]  P. Mem. at 9, 15.

7        The ALJ's first reason for discounting Diaz-Gomez's opinion – inadequately

8   referencing clinical or diagnostic findings – was not supported by substantial

9   evidence.  *See* AR at 634.  In his 2017 opinions, Dr. Diaz-Gomez diagnosed

10  plaintiff with lupus, hypertension, peripheral neuropathy, and spondylosis of

11  cervical region, and listed several clinical findings to support his opinion – joint

12  stiffness, left trapezius trigger point, and left TTP cervical facet joint C3-C5.  AR

13  at 1469, 1473.  The treatment records documenting these findings are a part of the

14  administrative record.  *See, e.g.,* AR at 530, 989, 1033, 1046, 1232.  Accordingly, a

15  failure to provide or reference clinical or diagnostic findings was not a legally

16  sufficient reason to give Dr. Diaz-Gomez's opinion little weight.

17       The ALJ's second reason for discounting the treating physician's opinion

18  was that he based the assessment on plaintiff's subjective complaints, diagnoses,

19  and treatment without documenting any significant positive objective findings.  AR

20  at 634.  A physician's opinion may be rejected if it is based on a claimant's

21  subjective complaints that were properly discounted.  *Tonapetyan v. Halter*, 242

22  F.3d 1144, 1149 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

23

24       [3]   Defendant contends plaintiff fails to present an argument that the ALJ
25  should have afforded Dr. Diaz-Gomez's opinion greater weight or erred in
    discounting it, and therefore waived any such argument.  D. Mem. at 14.
26  Defendant has a point; certainly plaintiff's argument could have been more clearly
27  articulated.  Nonetheless, the court finds the argument is fairly and sufficiently
28  raised.

As discussed below, however, the ALJ erred in his adverse credibility determination.  Thus, even if Dr. Diaz-Gomez's opinion were based solely on plaintiff's subjective complaints, this reason does not suffice to discount his opinion.

The ALJ's third reason for giving Dr. Diaz-Gomez's opinion little weight was that it was inconsistent with plaintiff's generally normal physical exams showing she had full range of motion of her neck and full motor strength in her upper and lower extremities.  AR at 634; *see Batson v. Comm'r*, 359 F.3d 1190,1195 (9th Cir. 2004) (holding that an ALJ may discredit physicians' opinions that are "unsupported by the record as a whole . . . or by objective medical findings").  But a large percentage of plaintiff's treatment notes reflect physical findings and clinical test results that support Dr. Diaz-Gomez's opinion.

Plaintiff was diagnosed with shingles and facial pain as early as September 2, 2015.  AR at 307. She had elevated ANA, Sjogrens, rheumatoid arthritis factor, and C-reactive protein levels on December 15, 2015.  AR at 317-19.  Her medical records consistently showed she received non-conservative treatment for these ailments.  For example, in 2016, after being diagnosed with osteoarthritis of the left knee, plaintiff received a steroid injection.  AR at 420, 436; *see Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (steroid shots generally do not qualify as conservative treatment).  Her laboratory findings documented she had positive ANA, SS-A, Smith, RNP, and RF, and that she was treated with steroids, Plaquenil and Imuran.  AR at 407.  Although, at times plaintiff's treatment records note she had normal range of motion of the left knee, the physical exams during the same doctor's visits document swelling of the left knee.  AR at 432, 435.

In April 2017, a physical examination revealed plaintiff was in no acute distress, but was diagnosed with cervical spondylosis without myeloopathy or radiooculopathy.  AR at 925.  Plaintiff was prescribed and continued taking opioids

1   for symptom control and Methotrexate for lupus.  AR at 925; *see Gentry v.*

2   *Comm'r*, 741 F.3d 708, 725 (6th Cir. 2014) (finding that the prescription of higher

3   risk biologic medications such as methotrexate indicated claimant's arthritic

4   condition was at least moderate to severe).  Plaintiff also received a Bupivacaine

5   injection for her cervical spondylosis pain management.  AR at 519.  Imaging

6   reports of her lower limb veins from October 2, 2017 showed plaintiff experienced

7   severe venous reflux disease in most of her lower limb veins, with some mild and

8   moderate at her left calf perforator and anterior accessory vein.  AR at 228.  The

9   reviewing doctor opined that plaintiff's daily activities were limited due to her leg

10   symptoms and that she was a candidate for vein ablation, which she received in

11   October and November 2017.  AR at 234-62.  Plaintiff also underwent

12   phlebectomy for her varicose veins in March 2018.  AR at 483.

13        In 2018 plaintiff complained of severe pain in the left side of her face from

14   her forehead down to the neck.  AR at 594.  A physical exam showed muscle bulk

15   equal bilaterally in upper and lower extremities but her motor exams of upper and

16   lower extremities were grossly normal.  AR at 595.  Plaintiff requested a Toradol

17   injection for pain management which was administered.  AR at 597.

18        In February 2019, at a rheumatology consultation, plaintiff reported pain

19   started in her hands and was progressing to many joints, even though her

20   neurological exam findings were grossly intact.  AR 965-68.  X-ray records from

21   March 2019 revealed that plaintiff had cystic/erosive changes in the bilateral

22   second and third toe, but no radiographic findings of inflammatory arthritis.  AR at

23   1034.  She also had scattered degenerative changes of the axial and appendicular

24   skeleton, and 2 milliliter retrolisthesis of C2 and C3 in the extension position.  *Id*.

25   The ALJ nevertheless determined that these x-rays were unremarkable.  AR at 631.

26   To the extent the ALJ implies plaintiff's unremarkable results on her x-rays are

27   inconsistent with her diagnoses and impairments, the court notes that lay intuitions

28

1   about medical phenomena are often wrong.  *See Padilla v. Astrue*, 541 F. Supp. 2d

2   1102, 1106 (C.D. Cal. 2008) (ALJ is not qualified to extrapolate functional

3   limitations from raw medical data).

4        On May 7, 2019, at a rheumatology follow-up visit, plaintiff complained of

5   right knee pain for the past 10 days.  AR at 981.  Her lab results showed an

6   elevated C-reactive protein level, sedimentation rate, and ANA level.  AR at 987.

7   Although plaintiff's neurological exam was grossly intact, she had MCP synovitis

8   and right knee swelling.  AR at 984.  Plaintiff's treatment plan included a weekly

9   Benlysta injection, athrocentesis, a steroid injection and anaesthetic into the right

10   knee joint and she was advised to rest for a few more days before resuming regular

11   activities.  AR at 989-90.

12        Plaintiff's physical therapy treatment records from May 3, 2021 showed that

13   her right knee mobility was restricted in all directions.  AR at 1240.  A physical

14   examination revealed her lower extremity functional scale was 29/80, she had

15   antalgic gait, lacked full knee extension at heel strike, and lacked proper heel

16   strike/toe off.  AR at 1242.  Additionally, plaintiff's clinical presentation was

17   unstable with unpredictable characteristics.  AR at 1244.  On June 9, 2021,

18   plaintiff's lower extremity functional scale improved to 31/80, with antalgic gait

19   and lacking full knee extension and proper heel strike.  AR at 1258.  Although the

20   ALJ considered these physical therapy records, the ALJ merely noted that they

21   showed plaintiff had "non-pitting left knee edema" and "motor strength ranging

22   from 4 to 4-/5 upon examination."  AR at 631; *see Gooden v. Colvin*, 2016 WL

23   6407367, at *7 (C.D. Cal. Oct. 28, 2016) (finding error where ALJ failed to

24   explicitly consider significance of physical therapy evidence implying some

25   physical work-related limitations); *Williams v. Berryhill*, 2019 WL 923749, at *12

26   (D. Nev. Feb. 1, 2019) (same); *see also Reddick v. Chater*, 157 F.3d 715, 722-23

27   (9th Cir. 1998) (an ALJ must not "cherry-pick" certain observations without

28

considering their context).

In short, the ALJ's third reason for discounting Dr. Diaz-Gomez's opinion – inconsistency with the objective medical evidence – was not supported by substantial evidence in the record as a whole.  Accordingly, the ALJ failed to cite any specific and legitimate reason supported by substantial evidence for giving Dr. Diaz-Gomez's opinion little weight.

### 3.    The ALJ Considered Ms. Perez's Report

Plaintiff additionally argues that the ALJ erred in failing to consider the medical source statement provided by social worker Erika Perez, LCSW.  P. Mem. at 13.  This is simply incorrect.

Ms. Perez is a licensed social worker who provided plaintiff with psychotherapy services.  *See* AR 1041, 1156.  Perez provided a letter dated February 23, 2021, and reported plaintiff was diagnosed with major depressive disorder, anxiety, and stressors.  AR at 1156.  Perez also reported that plaintiff suffered from  multiple psychiatric symptoms that impair plaintiff's ability to function, including depressed mood, sleep changes, psychomotor agitation, loss of energy, feelings of guilt, poor concentration, excessive worry, crying spells, and intrusive thoughts about past trauma.  *Id*.  Contrary to plaintiff's argument, the ALJ acknowledged and recounted all of this in considering the severity of plaintiff's mental impairments at step two.  AR at 624.

Licensed clinical social workers and psychotherapists are not among the categories medical professionals listed in the operative definition of "acceptable medical source."  *See* 20 C.F.R. § 404.1502(a); *Grotts v. Kijakazi*, 27 F.4th 1273, 1277 (7th Cir. 2022) (not all licensed medical professionals are "treating sources" or "acceptable medical sources").  An ALJ may only reject the opinion of a non-acceptable medical source by providing a germane reason.  *See Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015).

15

1   Here, Ms. Perez did not opine specific functional limitations, and the ALJ in

2   fact considered her report.  To the extent Mr. Perez may be said to have offered a

3   medical opinion and the ALJ may be said to have discounted that opinion in some

4   fashion, the ALJ did so by juxtaposing it with other medical findings, and by

5   noting plaintiff's failure to seek treatment consistent with the extent of her

6   complaints until January 2021, although she alleges an August 2015 onset date.

7   AR at 624-25.  These are germane reasons that placed Ms. Perez's report in

8   context.  Nothing more was required.

9   **B.    The ALJ Failed to Properly Consider Plaintiff's Subjective Complaints**

10   Plaintiff also argues the ALJ improperly discounted her symptom testimony

11   based on the objective medical evidence and her attempts to perform some limited

12   part-time work.  P. Mem. at 15-22.  Plaintiff argues the ALJ failed to articulate

13   clear and convincing reasons to discount her testimony.  *Id.*

14   The court looks to Social Security Ruling ("SSR") 16-3p for guidance on

15   evaluating plaintiff's alleged symptoms.  SSR 16-3p rescinded and superseded

16   SSR 96-7p and applies to decisions made on or after March 28, 2016.  SSR 16-3p,

17   2017 WL 5180304, at *1 (Oct. 25, 2017).  "Although SSRs do not have the same

18   force and effect as statutes or regulations, they are binding on all components of

19   the Social Security Administration."  *Id.* (citing 20 C.F.R. § 402.35(b)(1)).

20   In adopting SSR 16-3p, the SSA sought to "clarify that subjective symptom

21   evaluation is not an examination of an individual's character."  *Id.* at *2.

22   [SSR 16-3p] makes clear what our precedent already required: that

23   assessments of an individual's testimony by an ALJ are designed to

24   evaluate the intensity and persistence of symptoms after the ALJ finds

25   that the individual has a medically determinable impairment(s) that

26   could reasonably be expected to produce those symptoms, and not to

27   delve into wide-ranging scrutiny of the claimant's character and

28

1    apparent truthfulness.

2    *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

3         To evaluate a claimant's symptom testimony, the ALJ engages in a two-step

4    analysis.  *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting

5    *Trevizo*, 871 F.3d at 678).  First, the ALJ must determine whether the claimant

6    produced objective medical evidence of an underlying impairment that could

7    reasonably be expected to produce the symptoms alleged.  *Id.*  Second, if the

8    claimant satisfies the first step, and there is no evidence of malingering, the ALJ

9    must evaluate the intensity and persistence of the claimant's symptoms and

10   determine the extent to which they limit her ability to perform work-related

11   activities.  *Id.*

12        In assessing intensity and persistence, the ALJ may consider: a claimant's

13   daily activities; the location, duration, frequency, and intensity of the symptoms;

14   precipitating and aggravating factors; the type, dosage, effectiveness, and side

15   effects of medication taken to alleviate the symptoms; other treatment received;

16   other measures used to relieve the symptoms; and other factors concerning the

17   claimant's functional limitations and restrictions due to the symptoms.  *Id.* (citing

18   20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4; *Smolen*, 80 F.3d at

19   1283-84 & n.8 (9th Cir. 1996)).  To reject the claimant's subjective symptom

20   statements at step two, the ALJ must provide "specific, clear, and convincing"

21   reasons, supported by substantial evidence in the record, for doing so.  *Id.* at 921,

22   929.

23        At the first step, the ALJ here found plaintiff's medically determinable

24   impairments could reasonably be expected to cause the symptoms alleged.  AR

25   at 629.  At the second step, because the ALJ did not find any evidence of

26   malingering, the ALJ was required to provide clear and convincing reasons for

27   discounting plaintiff's testimony.  Here, the ALJ discounted plaintiff's subjective

28

complaints for two reasons.  First, the ALJ reasoned that plaintiff's allegations as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the objective medical evidence.  AR at 629.  Second, the ALJ found that plaintiff's work activities after the alleged onset date were inconsistent with her symptom testimony.  *Id*.

At the September 14, 2021 hearing, plaintiff testified that she worked for Amazon for two months delivering packages, but was terminated because she was doing "really bad" because of her knee injuries.  AR at 655.  One day she was feeling so bad that she had to be taken to the hospital.  *Id*.  She also sporadically worked for Uber for about two years making $900 to $1,000 per month.  AR at 655-56.  She testified she had a number of procedures performed on her legs to correct her vascular impairments but that she continues to have swelling in the legs despite these procedures, and has to elevate her legs on a daily basis to help with the circulation and to decrease swelling and pain.  AR at 657.  Plaintiff also had problems with her hands causing her to drop things a lot and her hands to feel heavy with a loss of strength.  AR at 657-658.  She continued to receive injections for her rheumatoid arthritis.  AR at 658.  Plaintiff also testified that she recently gained weight as a result of her chemotherapy treatment.  AR at 661.  Although she was still able to drive, she felt disoriented, had issues with forgetfulness, and did not feel safe when attempting to drive.  AR at 662.

The ALJ's first reason for discounting plaintiff's credibility, namely that the objective medical evidence was not entirely consistent with her asserted functional restrictions, is unavailing.  AR at 628-29; *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of corroborative objective medicine may be one factor in evaluating

1  credibility).  Although there was objective medical evidence of conditions that
2  could cause plaintiff to suffer from significant symptoms, the ALJ found that
3  plaintiff's claim that her lower extremities pain reduced her ability to perform
4  work-related activities was inconsistent with the objective evidence, because,
5  among other things, clinical and neurological findings suggested that she had
6  normal motor strength in her bilateral lower extremities.  AR at 629.

7      As set forth above, many of the findings the ALJ cites showing full range of
8  motion and full motor strength also showed that plaintiff was consistently
9  prescribed pain killers, steroid injections, and other aggressive treatment and pain
10 management medications.  Apparently, her treatment providers at those facilities
11 did not think these findings were inconsistent with her allegations of significant
12 pain.  If the ALJ believed that these medical findings were inconsistent with
13 plaintiff's allegation of disabling pain, he should have provided an explanation and
14 support for his conclusions.  The ALJ did not do so here.  *See Day v. Weinberger*,
15 522 F.2d 1154, 1156 (9th Cir. 1975) (An ALJ who is not qualified as a medical
16 expert may not make his own assessment as to the claimant's physical condition.).
17 When read as a whole, the treatment notes do not undermine plaintiff's testimony.
18 Rather, they consistently reveal that, despite some occasional signs of
19 improvement and her general ability to move her extremities, she continued to
20 suffer debilitating pain and sought conservative and non-conservative treatment for
21 her pain, such as steroid injections, opioids, chemotherapy, Methotrexate, and
22 physical therapy.

23     Second, the ALJ discounted plaintiff's symptom testimony because it was
24 inconsistent with her work activities after the alleged onset date.  AR at 629.  The
25 ALJ found that plaintiff's work as an Uber driver and her work at Amazon
26 delivering packages were inconsistent with her subjective complaints of pain from
27 lupus and other physical impairments preventing her from working.  *Id*.  But an
28

1   "ALJ's cursory summary of plaintiff's work history, without more, does not clearly
2   and convincingly detract from her credibility." *McNeill v. Astrue*, 2011 WL
3   871478, at *9 (C.D. Cal. Mar. 14, 2011).  Although plaintiff testified she worked
4   for Amazon for two months, and sporadically worked for Uber for two years
5   making between $900 and $1,000 per month, she also stated that she did not make
6   this amount every month and was unable to work for seven to nine months during
7   the pandemic.  AR at 658.  She testified that although there were good days when
8   she could work, there were also bad days when she was unable to get out of bed.
9   *Id*.  She also testified that she continues to receive injections for her pain
10  management and has gained weight as a result of her chemotherapy treatment.  AR
11  at 658, 661.  Plaintiff's off and on (and ultimately unsuccessful) work efforts are
12  not inconsistent with her symptom testimony.

13      Accordingly, the ALJ failed to properly consider plaintiff's subjective
14  complaints.  The reasons provided for discounting plaintiff's testimony were not
15  clear and convincing and supported by substantial evidence.

16  **C.      Grid Rule 201.10**

17      Plaintiff also mentions that if she were found to be limited to sedentary
18  work, a finding of disability would have resulted under Grid Rule 201.10, and
19  argues the ALJ failed to appropriately consider the Grid Rules.  P. Mem. at 5.  Grid
20  Rule 201.10 directs a finding of disability for a claimant who meets certain age,
21  education, and previous work experience requirements and is limited to sedentary
22  work.  20 C.F.R. Part 404, Subpart P, App. 2, § 201.10.  As discussed above, the
23  ALJ erred in evaluating the treating physician's opinion and plaintiff's symptom
24  testimony.  This case will be remanded for the ALJ to reconsider the medical
25  opinion evidence and plaintiff's symptom testimony, and then reassess plaintiff's
26  RFC.  The ALJ may then address the grids at step five and apply the rule that
27  corresponds with the new RFC determination
28

# V.

# __REMAND IS APPROPRIATE__

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits).  But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

Here, remand is required to permit the ALJ to reconsider the medical evidence and opinions and plaintiff's testimony, and either accept the opinions and testimony or provide legally sufficient reasons to reject them.  After doing so the ALJ shall reassess plaintiff's RFC and then proceed through steps four and five to determine what work, if any, plaintiff was capable of performing during the relevant period.

## VI.

## <u>CONCLUSION</u>

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: September 28, 2023

_____
SHERI PYM
United States Magistrate Judge

22